IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-182-BR

| | | |
|---|---|---|
| WOODELL MCGOWAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MURPHY-BROWN, LLC d/b/a | ) | |
| SMITHFIELD HOG PRODUCTION | ) | |
| DIVISION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion in limine to exclude the expert testimony of Kendall Thu, Ph.D. pursuant to Federal Rules of Evidence 403 and 702 and in accordance with Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). (DE # 92.) Plaintiffs have filed a response in opposition to the motion. (DE # 110.)

The court is aware of its gatekeeping function under Rule 702 and Daubert in regards to expert testimony, as the Fourth Circuit Court of Appeals has summarized.

> [A] district court's gatekeeping responsibility [is] to "ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand."
> Relevant evidence, of course, is evidence that helps "the trier of fact to understand the evidence or to determine a fact in issue." To be relevant under *Daubert*, the proposed expert testimony must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
> With respect to reliability, the district court must ensure that the proffered expert opinion is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Daubert* offered a number of guideposts to help a district court determine if expert testimony is sufficiently reliable to be admissible. First, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." A second question to be considered by a district court is "whether the theory or technique has been subjected to peer review and publication." Publication regarding the theory bears upon peer review; "[t]he fact

of publication (or lack thereof) in a peer reviewed journal will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." Third, "in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error." Fourth, despite the displacement of *Frye*, "'general acceptance'" is nonetheless relevant to the reliability inquiry. "Widespread acceptance can be an important factor in ruling particular evidence admissible, and a known technique which has been able to attract only minimal support with the community may properly be viewed with skepticism." *Daubert's* list of relevant considerations is not exhaustive; indeed, the Court has cautioned that this "list of specific factors neither necessarily nor exclusively applies to all experts or in every case," and that a trial court has "broad latitude" to determine whether these factors are "reasonable measures of reliability in a particular case."

Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir.) (citations omitted) (most alterations in original), cert. denied, 137 S. Ct. 2250, 198 L. Ed. 2d 680 (2017).

Dr. Thu is a cultural anthropologist. In a related case, McKiver v. Murphy-Brown, LLC, No. 7:14-CV-180-BR, the court allowed defendant's motion to exclude Dr. Thu's testimony, explaining:

> It's indicated in his report, that he will offer the opinion regarding the parameters of the rural community's use and enjoyment of their land and means by which, if at all, social and familial practices have been disrupted or degraded by the presence of a nearby [Concentrated Animal Feeding Operations ("CAFOs")]. That part of his report will not be received into evidence.
> Plaintiffs themselves can testify about their historical use of their properties, how their uses of the properties have been disrupted since the Kinlaw farm began operations and the importance of outdoor activities to their quality of life. Much of Dr. Thu's written report concerns interviews that he's had with the plaintiffs themselves and they can testify to that and it would be cumulative for him to repeat what they said.
> In addition, the jury does not need an expert to -- in understanding that testimony and it's not relevant. . . .
> On page 1, he has indicated that he would report on opinions about the state of scientific and industry knowledge with regard to the negative effects of CAFOs over the last several decades. Dr. Wing has already testified about this topic and I recall Dr. Rogers himself went into it to some degree, so the Court concludes that this testimony would be cumulative.
> The offer of opinion evidence on the inadequacy or ineffectiveness of defendant's complaint-driven system, the Court holds that the plaintiffs themselves can testify about their own experiences in attempting to

> complain or why they felt like they could not complain to the defendant or to the local authorities or just say the same things on the witness stand that Dr. Thu would report that they said to him. And that there are others who can testify about the -- any perceived intimidation by those in the industry. Dr. Wing has already testified about his personal experience; and I would point out that in his report, Dr. Thu quotes from the EPA letter, which as you know, I have excluded from evidence, which states that residents, including current and former Riverkeepers working in eastern North Carolina rivers recounted firsthand incidents of harassment, intimidation and retaliatory behavior, including physical and verbal threats by swine facility owners and operators and their employees. And that appears on page 44 of his report.
>
> Of course, these residents, if listed or added by amendment, can testify easily themselves as to what they experienced and the court holds that the jurors do not need any scientific evidence to help them understand that testimony.

McKiver, 4/6/18 Tr., at 183-85.

For the most part, plaintiffs do not argue that the court should not reach the same conclusions about Dr. Thu's proposed testimony in this case. However, they request the option to call him as a witness to testify about the state of scientific and industry knowledge regarding the negative effects of CAFOs, to the extent such testimony would not be cumulative of another expert. The court recognizes it can be difficult to assess prior to trial whether that portion of Dr. Thu's proposed testimony would be cumulative. Even so, the court will not deviate from its prior conclusions about Dr. Thu's proposed testimony. At the appropriate time, plaintiffs may file a motion requesting that the court permit Dr. Thu's non-cumulative testimony about scientific and industry knowledge.

For the foregoing reasons, defendant's motion in limine to exclude the expert testimony of Dr. Thu is GRANTED, subject to the court's ruling on any motion plaintiffs file to permit his

non-cumulative testimony.

This 18 May 2018.

_____
W. Earl Britt
Senior U.S. District Judge