UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-00182-BR

| | |
|---|---|
| WOODELL MCGOWAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| MURPHY-BROWN, LLC, d/b/a | ) |
| SMITHFIELD HOG PRODUCTION | ) |
| DIVISION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the court on the parties' post-trial motions following the entry of final judgment on the jury verdict awarding two of the nineteen plaintiffs in this case compensatory and punitive damages. (DE ## 332, 334, 336, 340.)

## I. DEFENDANT'S MOTION TO ALTER OR AMEND

Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, defendant requests that the court vacate the judgment. "A Rule 59(e) motion may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.' It is an extraordinary remedy that should be applied sparingly." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (citations omitted). Because defendant filed its motion within 28 days of entry of the judgment, the court considers it only under this standard, rather than under the Rule 60(b) standard. See Robinson v. Wix Filtration Corp., 599 F.3d 403, 412 (4th Cir. 2010) ("We have squarely held, however, that a motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no

later than [28] days after entry of the adverse judgment and seeks to correct that judgment." (citations omitted)).

Defendant argues that the judgment should be vacated (1) based on post-trial amendments to North Carolina's Right to Farm Act ("RFA") and (2) for the failure to join Joey Carter, the individual who owns the subject farm, as a necessary and indispensable party. Defendant filed a similar motion on the same grounds in the related case of <u>McKiver v. Murphy-Brown, LLC</u>, No. 7:14-CV-180-BR, and for the reasons stated in the court's 17 December 2018 order, <u>see id.</u> (DE # 346), the motion will be denied.

## II. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Based on Rule 50(b) of the Federal Rules of Civil Procedure, defendant renews its earlier motions for judgment as a matter of law. In considering a Rule 50(b) motion, "the question is whether a jury, viewing the evidence in the light most favorable to [the non-movant], could have properly reached the conclusion reached by th[e] jury. If reasonable minds could differ about the result in this case, [the court] must affirm the jury's verdict." <u>Bryant v. Aiken Reg'l Med. Ctrs. Inc.</u>, 333 F.3d 536, 543 (4th Cir. 2003) (citation and internal quotation marks omitted).

Defendant argues that it is entitled to judgment as a matter of law because (1) Joey Carter is an indispensable party; (2) plaintiffs presented no evidence to support compensatory damages; and (3) plaintiffs failed to present sufficient evidence to support punitive damages. As for the first ground, defendant relies on its motion to alter or amend the judgment. As addressed above, for the reasons stated in <u>McKiver v. Murphy-Brown, LLC</u>, No. 7:14-CV-180-BR (DE # 346), the court concludes Carter is not an indispensable party.

Regarding the issue of compensatory damages, defendant relies on a pre-trial, 2017 amendment to the RFA. According to defendant, the amendment is clarifying and remedial. As

such, defendant maintains, the amendment applies retroactively to foreclose plaintiffs' recovery of annoyance damages and limits their recovery to diminished rental value, which damages plaintiffs waived. Plaintiffs contend that the amendment is a substantive change to the law and therefore applies prospectively to causes of action brought after the effective date of 11 May 2017. Because plaintiffs brought this action prior to that time, they contend the amendment does not apply to limit their claimed damages.

> In construing a statute with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it. A clarifying amendment, unlike an altering amendment, is one that does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment. As a result, in addition to applying to all cases brought after their effective dates, such amendments apply to all cases pending before the courts when the amendment is adopted, regardless of whether the underlying claim arose before or after the effective date of the amendment.

Ray v. N.C. Dep't of Transp., 727 S.E.2d 675, 681 (N.C. 2012) (citations and internal quotation marks omitted). In contrast, if the amendment is altering, its effective date controls. Id. at 682.

"To determine whether the amendment clarifies the prior law or alters it requires a careful comparison of the original and amended statutes. If the statute initially fails expressly to address a particular point but addresses it after the amendment, the amendment is more likely to be clarifying than altering." Id. (citations and internal quotation marks omitted). "Where, however, the legislature alters an unambiguous statute, it is presumed that the legislature intended to change the law." Tucker Auto-Mation of N.C., LLC v. Russell Rutledge & Rutledge Commercial, LLC, No. 1:15-CV-893, 2017 WL 2930926, at *8 (M.D.N.C. July 10, 2017) (citing Childers v. Parker's, Inc., 162 S.E.2d 481, 484 (N.C. 1968)).

Prior to 2017, the RFA did not contain a provision addressing compensatory damages. Rather, the common law applied. Under the common law, as previously construed by this court,

annoyance and discomfort damages, which plaintiffs here allege, may be recovered in a private nuisance action. See In re NC Swine Farm Nuisance Litig., No. 5:15-CV-13-BR (DE # 476, at 16-20). In 2017, the North Carolina General Assembly enacted "An Act to Clarify the Remedies Available in Private Nuisance Actions Against Agricultural and Forestry Operations," thereby limiting "compensatory damages that may be awarded to a plaintiff for a private nuisance action where the alleged nuisance emanated from an agricultural or forestry operation" to the reduction in fair market value for a permanent nuisance and to diminution of fair rental value for a temporary nuisance. 2017-11 N.C. Sess. Laws 1 (May 11, 2017) (codified at N.C. Gen. Stat. § 106-702(a)).

This amendment to the RFA changed the law. First, it did not codify the common law, under which, as noted, a party could recover annoyance and discomfort damages for a private nuisance. Cf. Ray, 727 S.E.2d at 682-83 (recognizing that the legislature's codification of the common law in "virtually the same manner" suggests the amendment is clarifying). Second, although the amending act's title characterizes the act as one "to clarify," the legislature nonetheless expressed its intent that the amendment apply prospectively. See 2017-11 N.C. Sess. Laws 1 (May 11, 2017) ("This act is effective when it becomes law and applies to causes of action commenced or brought on or after that date."). Third, the amendment did not fill in a gap in the law. There was no gap and nothing to clarify.

Nor is the amendment remedial. A remedial statute is one "which do[es] not create new or take away vested rights, but only operate[s] in furtherance of the remedy or confirmation of rights already existing," Smith v. Mercer, 172 S.E.2d 489, 495 (N.C. 1970) (citation omitted), and thus "is presumed to operate retroactively," Bailey v. State, 526 S.E.2d 657, 662 (N.C. 2000) (citation omitted). Because the amendment restricts the compensatory damages that a plaintiff

4

could recover under the common law for a private nuisance, it applies prospectively.  See Rhyne v. K-Mart Corp., 594 S.E.2d 1, 12 (2004) ("A right to sue for *an injury* is a right of action; it is a thing in action, and is property." (citation omitted)); Williams v. Atl. Coast Line R.R., 69 S.E. 402, 403 (N.C. 1910) ("[T]he word 'property' . . . includes the value of the injury involved in the litigation." (citation omitted)).

In sum, the 2017 amendment operates to alter the compensatory damages recoverable for a private nuisance emanating from an agricultural or forestry operation, and the effective date controls.  Because plaintiffs brought this action prior to that time, the amendment does not apply to limit the compensatory damages they may recover.

Lastly, defendant contends it is entitled to judgment as a matter of law because plaintiffs failed to present sufficient evidence to support punitive damages.  Considering the evidence developed at trial in the light most favorable to plaintiffs, a reasonable jury could have found defendant liable for punitive damages.

The court will deny defendant's motion for judgment as a matter of law.

### III. DEFENDANT'S MOTION FOR A NEW TRIAL

Defendant moves for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure.  "In considering a motion for a new trial, a trial judge may weigh the evidence and consider the credibility of witnesses, and if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010) (citation and internal quotation marks omitted).

Defendant asks the court to revisit a number of its prior rulings, covering pretrial cross-motions for summary judgment through jury instructions.  The court declines to disturb these

rulings. The only ground defendant raises that merits a brief discussion is the court's denial of defendant's motions for a mistrial.

Defendant first challenges the denial of its motions (initial and renewed) for a mistrial based on juror misconduct, specifically "unsanctioned jury research." (Def.'s Br., DE # 335, at 20.) Defendant argues that the presumption of prejudice set forth in Remmer v. United States, 347 U.S. 227 (1955), applies, plaintiffs cannot rebut it, and a new trial is warranted.

> In *Remmer*, the Supreme Court held that a rebuttable presumption of prejudice arose from a third party's unauthorized communication with a juror during the trial. In announcing this rule, the Court stated that any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial. However, the Court cautioned that this presumption of prejudice did not establish a per se requirement of a new trial. The Court stated that the presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

United States v. Lawson, 677 F.3d 629, 641 (4th Cir. 2012) (citations, alterations, footnote, and internal quotation marks omitted). The Fourth Circuit has applied this presumption to a juror's unauthorized use of internet research, see id. at 644-46 (holding a juror's unauthorized use of Wikipedia during deliberations to learn the definition of an element of the crimes with which the defendant was charged created a rebuttable presumption of prejudice), as well as to extrajudicial juror communications in civil cases, see Stephens v. S. Atl. Canners, Inc., 848 F.2d 484, 487-88 (4th Cir. 1998) (applying presumption of prejudice where altered exhibits were submitted to the jury); Haley v. Blue Ridge Transfer Co., 802 F.2d 1532, 1537 & n.9 (4th Cir. 1986) (applying a presumption of prejudice to a non-juror's biased remarks to the entire jury). The court assumes, without deciding, the presumption of prejudice applies here.

The issue then is whether the presumption has been rebutted. To do so, the prevailing party must "establish[] the lack of a reasonable possibility that the jury verdict's was influenced

by an improper communication." Stephens, 848 F.2d at 488 (citation and internal quotation marks omitted). In determining this issue, the court "consider[s] all of the competent evidence objectively in light of common experience, and exercise[s] its reasoned discretion." Haley, 802 F.2d at 1537 n.11.

The evidence of record in this case shows that, about halfway through the trial, a juror informed court personnel that another juror had conducted research about matters related to the case and relayed that information to other jurors. (6/13/18 Tr., DE # 302, at 4.) Immediately upon learning that fact, the court notified counsel for both sides and, after receiving input and consent from counsel, questioned the juror who initially reported the issue.[1] (Id. at 4-14.) The juror stated that in the past week one or more jurors had relayed to other jurors information obtained from the Internet about the location of the law firm of plaintiffs' lead counsel; the length of the prior trial in a related case; the possible indictment of an individual who performed work on the subject farm and who was referred to during the trial; and possible legislation that may negatively impact future, similar cases. (Id. at 9-14.)

The court then individually questioned the other jurors and the initial juror again, all in the presence of counsel. (Id. at 19-22, 24-50, 52-56.) The court received conflicting information about whether any juror had conducted research on the Internet and whether any jurors had learned from another juror outside information concerning the case. No juror admitted to conducting outside research. Jurors who acknowledged hearing some outside information from another juror confirmed to the court that s/he had not heard anything that would interfere with his or her ability to remain fair and impartial.

---

[1] Counsel subsequently reviewed the rough draft of the transcript of that questioning. (See 6/13/18 Tr., DE # 302, at 17-18.)

7

After questioning all jurors, the court sought counsel's input about what, if anything further, to do. (Id. at 50-52, 57-58.) Defendant moved for a mistrial, which plaintiffs opposed. (Id. at 59-74.) The court denied the motion, placing primary weight on the jurors' assurances that they could remain fair and impartial. (Id. at 74-75.) The court gave counsel the opportunity to move to disqualify a particular juror, and counsel declined. (Id. at 75-76.) From that point, the court reminded the jury *just prior to overnight recesses* of its instructions at the beginning of the case to refrain from discussing the case with others and from obtaining information about the case from sources outside the courtroom. (See, e.g., id. at 177-79; 6/15/18 Tr., DE # 309, at 185-86; 6/20/18 Tr., DE # 289, at 206; 6/21/18 Tr., DE # 290, at 198-99.) The court reiterated these instructions in its closing instructions. (See 6/26/18 Tr., DE # 291, at 20-21.)

Considering all these circumstances, the court concludes there is not a reasonable possibility that the jury verdict's was influenced by improper communications. Importantly, the outside information that certain jurors recalled as having been relayed did not bear directly on any issue in the case. Furthermore, those few jurors who recalled hearing outside information were able to recount few details, meaning they did not consider the information particularly significant, and they assured the court that they could remain fair and impartial. The timing of when the court became aware of the juror misconduct also weighs in favor of concluding the verdict was not improperly influenced. The court learned of the misconduct well in advance of jury deliberations and thus was able to cure any potential prejudice by its repeated instructions prior to overnight recesses, see Lawson, 677 F.3d at 646 n.21 (recognizing that there may be "situations in which misconduct is discovered before a verdict is reached, and the district court appropriately acts to alleviate the potential for prejudice"), which instructions the court presumes the jury followed, see Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 501 (4th Cir. 2001)

8

("'[W]hile it may not always be simple for the members of a jury to obey' a curative instruction, there is an 'almost invariable assumption of the law that jurors follow their instructions. . . .'" (quoting Richardson v. Marsh, 481 U.S. 200, 206-07 (1987)). In sum, the court is satisfied that the jurors acted fairly and impartially in reaching their verdict, irrespective of what some of the jurors may have heard from another juror.

Defendant also challenges the denial of its motion for mistrial based on certain statements plaintiffs' counsel made during closing and rebuttal arguments. "A new trial is required on the basis of attorney misconduct only when a miscarriage of justice would otherwise result." Prichard v. Kurucz, 22 F. App'x 122, 125 (4th Cir. 2001) (citing Gearin v. Wal–Mart Stores, Inc., 53 F.3d 216, 219 (8th Cir. 1995) (per curiam)). Defendant argues that plaintiffs' counsel improperly referenced executive compensation as a measure of compensatory damages several times in his arguments, irreparably prejudicing it.

At the end of his closing argument, plaintiffs' counsel stated, "[W]hen you talk about compensation as opposed to punitive damages, . . . there's evidence of the way that Smithfield compensates themselves." (6/25/18 Tr., DE # 335-27, at 58:17-20.) After the court overruled defendant's objection to that statement, he pointed out the total compensation paid to four executives and argued that in considering compensation, the jury should consider that executive compensation. (Id. at 58:24-59:2.)

Later, during plaintiffs' rebuttal, the court sustained defendant's contemporaneous objection to counsel's reference to executive compensation in the context of compensatory damages and immediately counsel then changed his argument to address *punitive* damages. (Id. at 140:3-141:19.) Shortly thereafter, counsel started to reference again executive compensation. Defendant objected and the court instructed counsel to make clear the damages about which he

9

was talking. (Id. at 141:25-142:4.) Counsel responded, "When we're talking about *punitive* damages and what the defendant can afford . . . . Look at their corporate report." (Id. at 142:5-7.)

After arguments concluded, yet before the court instructed the jury, defendant filed its motion for mistrial based on counsel's purportedly improper arguments regarding executive compensation. (DE # 260.) Alternatively, defendant requested that the court give a curative instruction. (Id.) The court denied the motion for mistrial but allowed defendant's alternative request, (6/26/18 Tr., DE # 291, at 2), and included in the jury instructions the very instruction defendant requested: "You have heard evidence regarding the compensation of various employees of the defendant and other companies. You may not consider this evidence in determining the amount of compensatory damages, if any, to award to any individual plaintiff," (id. at 13).

The court presumes the jury followed this instruction. See Nichols, 251 F.3d at 501. Considering collectively plaintiffs' counsel's arguments about executive compensation, particularly in light of the court's limiting instruction about executive compensation with its specific reference to compensatory damages, and the amount of compensatory damages the jury awarded, the court concludes that a miscarriage of justice would not result absent a new trial.

The court declines to order a new trial on any ground asserted.

### IV. **PLAINTIFFS' MOTION TO AMEND**

Plaintiffs move to amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure.[2] Specifically, they request that the court set aside its reduction of the jury's punitive

---

[2] In the motion itself, plaintiffs cite only to Rule 60(b). In their memorandum in support, however, they cite to Rules 59(e) and 60(b). Because plaintiffs filed their motion within 28 days of the entry of the judgment, the court considers it only under the Rule 59(e) standard, see Robinson, 599 F.3d at 412, set forth above.

10

damages awards on the ground that North Carolina's statutory punitive damages cap is unconstitutional as applied. The court has previously considered the arguments plaintiffs raise and stands by its earlier decision reducing the punitive damages awards in this case. (DE # 323.)

## V. **CONCLUSION**

For the foregoing reasons, defendant's motions to alter or amend the judgment, for judgment as a matter of law, and for a new trial are DENIED. Plaintiff's motion to amend the judgment is DENIED.

This 26 December 2018.

_____
W. Earl Britt
Senior U.S. District Judge